Mr. Berg. Next case for argument, Russell v. Cook County. Mr. Stack. May it please the court. My name is Paul Stack and I'm the attorney for the appellant, Mike Russell. The record shows that on February 28th, the two parties called the magistrate and reported that the case had been settled. On March 13th, my client was stabbed a second time. And in the proceeding below, the court has interpreted, using extrinsic evidence, the settlement agreement in which incorporates the February 28th agreement, to also release the second stabbing. And we believe that under Illinois contract law, the actions of the district court were erroneous. This is a written contract. It contains an integration clause, which says simply, this is the entire agreement. You can't consider matters outside the four corners of the agreement. It says you can't consider matters outside the four corners of the agreement. But the agreement does not have in its four corners the critical date. That date is being set by the time when somebody signed. It's not apparently part of the agreement. Am I correctly understanding it? No, your honor. I don't believe so. So where in the contract does it say this two years runs from date X? The contract says it runs, two years runs from the execution date of the agreement. That's the thing the parties agreed on. And then after the parties agree on that language, Russell signs on some date. Right. Right. Suppose he had put in that document, October 3rd, 2019. Would that be beyond anybody's ability to look into? Even though it was a date five years in the future? No, I think that an ambiguity. How about October 20, 1653? So that the only things being waived, on your view, were back in the Middle Ages? No, I think. No, certainly not. So of course we would need to figure out when he actually signed it. What do we know about when he actually signed it? That is in the record, although I didn't argue it at the time. His pen was put to paper February 28th, 2014. And how that came to be, your honor, that's in the record. Do you say we know that or that that's his contention? No, I know that, your honor. No, no, no. I don't want to know what you know. I want to know what the record shows beyond any possibility of doubt. Right. No material dispute. I can tell you how that issue arose. In their reply brief in opposition to our motion to alter amend, the state made the allegation that there may have been fraudulent conduct. When that happened, I called the attorney who had previously represented Russell. His name is William Klein. He was a trial bar member who was appointed. I said, Mr. Klein, the state has said this. But by implication, it suggests that you are somehow involved in a fraud. And I think you ought to spread of record the events that occurred on that day. So I filed a motion on July 1st, 2015, for leave to file a sworn declaration of William Klein. That's document number 49 in the district court. Document 49-1 is the declaration of Mr. Klein. He was present at the county jail when Mr. Russell signed it. And he says, under oath, it was on February 18th, 2014. February 18th? No, I take that back. It was February 28th, maybe? Yes, it was February 28th. Yes, here he says in paragraph 10 of his declaration, Prior to 9.30 a.m. on February 28th, 2014, I drove to the Cook County Jail where Mike D. Russell signed the stipulation for compromise settlement in my presence. At 9.30 a.m. on February 28th, Magistrate Judge Gilbert, Patrick Russell, and I had a conference call in which Patrick Russell and I reported to Magistrate Judge Gilbert that the case had settled. And I reported that Mike D. Russell had signed the stipulation for compromise settlement. After the conference call, Magistrate Gilbert entered a minute order stating the conference call but held that the parties had reported they had settled the case. A copy of the notification of docket entry for February 28th, 2014 is attached. Now, that motion for leave to file was denied. But the court entered its decision denying my motion to enter or to offer an indictment. How seriously was he injured? What? How seriously was he injured? He got stabbed in the head. He got a number of stitches. The first time he got stabbed very badly. He had a punctured lung and so forth. We're talking about above his eye, right? It was above his eye, yeah. Well, how seriously was he injured? I don't know. Did he just get stitches or did he need... It sounded like he got stitches. Well, that's not a big deal, right? He may have been a day or so at the hospital. I don't know. I really don't. The reason I don't, Your Honor, is because we really never got to the facts of this case. I filed the amended complaint. I don't know. It doesn't sound like much. I think it's a combination of things. One, he had been sending these written statements to the prison guards. I mean, the skull is very hard. If the knife doesn't break your skull but just the skin, then you have some bleed and you need stitches. Well, I think it's more than that, Your Honor. He's in a prison. This other prisoner, I believe we will show, had been moved from the psych ward. And the other prisoner is yelling for several days that he's going to kill my guy and that he is going to stab him in the eye. And Russell keeps writing these protests to the guards saying, this guy is going to stab me. Can you move me out of here? Can you move him out of here? Can we do something? Three written documents go from Russell saying this guy is going to stab me in the eye. Sure enough, one day he's standing by the chuck hole of the cell, and the guy goes and tries to stab him in the eye. He misses. He hits him in the head. I think there's damages there, Your Honor. How much, I don't know. But I don't think I particularly care to have that happen to me. No, I've argued the issue of the integration clause, which there is in this contract, and I've argued the air safety case, which says if there's an integration clause, you cannot introduce extrinsic evidence to interpret it. But you just conceded that you can. What? Right? If he had signed it February 21, 1543, you've already told me that that would not be binding. You wouldn't say, well, the integration clause means that you can't look past that, and therefore the release applies only to torts that occurred while Queen Elizabeth was on the throne. I think at that point, Your Honor, if you saw a date, then it's totally out of whack. Let's take February 30, 2014. That's what the district court found. District court thought that the date was totally out of whack because it was six days before the document was transmitted to it. Now, there may be a problem because the district court didn't find what the actual date was, but we need to find what the actual date was. Well, the actual date is in the record. It was February 28.  It was introduced by me to set the record straight regarding Mr. Klein, who also, like me, was an appointed attorney. But it is there, and I don't think it's contested. But you didn't argue that that was the execution date? No. No, the execution date. The reason I didn't, Your Honor, is because in an integrated contract, you're locked into the four corners of that contract. And in this case, the contract said it was executed February 21. And that's an impossibility. No, no, it's not an impossibility. He didn't have the contract until the 27th. No, no. It's an impossibility that he actually executed the contract. Well, when you say executed, you're saying signed. That's what we're looking for. It's a possibility that he could actually have signed that agreement because it was Mr. Klein who brought the agreement to him. So, yes, the date itself was not an impossibility. It could be very clear. It occurred after the accident, after a settlement had been agreed upon, but before he signed. So it is what it is. I think that for the court to use extrinsic evidence to interpret this agreement so it wipes out a totally separate cause of action, which was reached prior, if I may finish my sentence, a prior cause of action, not a second cause of action, which was reached completely after this agreement was reached in principle, I think is just wrong.  Well, thank you, Mr. Stack. Your Honor. Thank you, Mr. Russell. Thank you. May it please the court. My name is Patrick Russell, and I represent the appellees Sheriff Tom Dart in Cook County. The uncontroverted evidence on this record is that the defendants could not have executed the settlement agreement prior to March 19th, 2014. That's absurd. That's the day when the document showed up in the hands of the defense counsel. Right? But we know, we judges particularly know, that there are lots of things signed in prison that take a good long time to get out of prison. That's the source, reason why we have the prison mailbox rule. Yes. And lawyers, when they get their hands on documents, don't always get them to opposing lawyers' hands instantly. Correct. What we know is the document was signed sometime between February 17  Correct, Your Honor. Where in that range was it signed? Your Honor, that is not clear on this record. You just told me it was clear it couldn't have been signed before the 19th. Right? So that's preposterous. We have Mr. Stack, who says that it is established in the record, beyond any room for debate, that it was signed on the 28th. Is there any contrary evidence? I respectfully disagree that that is not part of the record, Your Honor. A responding party, if they fail to comply with Rule 56.1, additional facts may be ignored, and properly supported facts that are asserted by the movement. No, wait. Look. Mr. Stack said that it is in the record. It's entirely possible that Mr. Stack forfeited his client's position by not drawing it to the attention of the judge. But the first question we need to figure out is, is it in the record? I believe by the district court judge striking his motion to add that affidavit that it's not a part of this record on appeal. All right. If it is not in the record, then do we have anything other than an empty record about where in this period, from February 27 to March 19, the document was signed? We apparently know nothing. Respectfully, Your Honor, the contract could not be executed until it was signed by all the parties. Oh, on that ground, it's never been executed at all, because the only copy we have hasn't been signed by the defendants. But what is clear, Your Honor, is that the early... Isn't that true on your view? That the defendants could sit on this from now until the next ice age and then decide when they wanted to exclude some of his claims, sign it, and then get a two-year period of immunity. Is that the defense view? That's hard to take seriously. Respectfully, Your Honor, the parties didn't agree that there was a settlement agreement in place. And on this record, that could be effective March 19, 2014. So it's not indisputable that there was a valid settlement agreement. Now I'm completely lost. What you need is for there to be an effective settlement agreement, because otherwise you can't plead release. Correct. So if you're now saying there wasn't any signature by the defendant, there is no settlement agreement, then you have no release, and then the second lawsuit goes forward. You can't play this both ways. And I'm not trying to, Your Honor. All the FLEs are stating is that the contract was valid as of March 19, 2014, when a copy was transmitted with the plaintiffs. And never signed by anybody else. I believe it was signed, Your Honor, but the copy... Well, how come we don't have that in the record? The parties were unable to produce the copy signed. Then we don't have it in the record that anybody other than Russell ever signed it. Right? Respectfully, Your Honor, the parties... The record is what it is. And, Your Honor, the parties stipulated that there was a valid settlement agreement. Should I proceed? And just so that it's clear for this record, the appellant, Mike Russell, submitted his first grievance related to the fear of assault on February 24, 2014. The settlement agreement was generated and emailed in Microsoft Word format, in a Word doc format, asking for any red line changes to be made on February 27, 2014. At some point, it's clear the appellant did sign the agreement, but it was dated in his hand, February 21, 2014. And on March 11, 2014, there's an internal communication between the attorneys for the appellees indicating they had not received any red line edits, feedback, or other communications from counsel on the draft settlement agreement sent February 27, 2014. Now, the plaintiff alleges he was stabbed on March 13, 2014, but, as we've discussed, the copy wasn't received in PDF format with the appellant's signature until March 19. So, I believe that the parties could have contracted around the effective date versus the execution date, but that is not the issue that's up on appeal. And I believe it's long-held law that a settlement agreement cannot be executed until it's signed by both parties, which is head and armory versus the Providence Insurance Company. And, therefore, defendants maintain that, I'm sorry, appellees maintain that the earliest it could have been signed by the defendant appellees was March 19. And then, as to the ambiguity of the contract, I believe that's... So, you are really saying, I must say, I read your brief, couldn't believe you were really saying this, but you're really saying that once Russell signed, the document shows up in the hands of the defendants. The defendants now say, I can get myself immunity for any tort I commit against Russell simply by deferring signing this document, and I'm now going to go out and kill him. And then, the day after they kill him, they sign the document, and voila, the wrongful death suit is released. Is that what you're really saying? No, it is not, Your Honor. What I would suggest... It is what you are saying. I just can't believe it. Under any theory, even of estoppel, the earliest the defendants, in that scenario, could be held to signing the contract is March 19, and it's not disputed. There's no dispute about whether or not the defendants signed it on March 19. Look, just take my example. The defendants have this document signed by Russell and not signed by them. The document says, all claims two years before the execution date are released. The defendant's position is the execution date is when they sign, not when Russell signs. And therefore, it follows that the defendants can commit any mayhem they wish, sign the document the next day, and that tort will be released. I would disagree, Your Honor. I would say that... Well, okay, what is the logical flaw in, dare I say it, your argument? Because this is your argument. Correct, Your Honor. But my argument is the earliest defendants could have signed it is March 19, and the earliest they could be held to is March 19. I didn't ask about March 19. I asked you to deal with my hypothetical. You cannot deal with my hypothetical by talking about the earliest being March 19. Is my hypothetical a correct description of your argument? And if not, tell me why not. I would say it is not a correct description of my argument, Your Honor, because in your hypothetical, it doesn't make room for the fact that the party would be able to sign when they did receive the contract. And in this case, the defendants can't argue something held from March 19 or March 20. There's nothing about able to sign. The document says two years before the execution date. Correct, Your Honor. It doesn't say two years before it could have been executed at the earliest. It says two years before the actual execution date. That's what it says. And in a lawsuit that was brought... And that has to mean either the date that Russell signs, he is the party sought to be bound, or it means the date the defendants signed. And I'm trying to figure out how it can possibly mean the date that the defendants signed. I believe it's the date that all parties signed the contract, Your Honor. Then it has to mean the date the defendants signed, and then, logically, it gives the defendants complete control of the ability to commit a new tort and immunize themselves for it. And you have agreed with me that that makes no sense whatever. But I respectfully... So your argument, plugging in the gaps, makes no sense whatever. I respectfully disagree, Your Honor, and I would suggest that the defendants were only able to sign on March 19th and would have been bound by an execution date of March 19th. And if Your Honors have no further questions, I would ask that you affirm the decision. You say March 19th... Yes, Your Honor. ...is the earliest, could have been signed because you hadn't gotten the agreement yet? For all we knew that there would have been strikeouts, there could have been carve-outs, there could have been changes to the language. March 19th was the date that the agreement was conveyed back to the defendants. Correct. Signed by Russell. Signed by Russell. That's the logic of the district court's decision is that once the defendants had the signed document in hand, that's the default execution date because the date on the contract was an impossibility. That is correct, Your Honor. I mean, that's how I understand the reasoning that the district court used. Once the date on the contract itself is shown to be physically impossible, then it's the date that the document was conveyed, absent proof of some other date which we don't have in this record. I agree, Your Honor. At that point, there's an ambiguity. The air safety case cited is not applicable, and you have to look to parole evidence. The evidence submitted was unequivocal and not contested. There were stipulated facts and then facts that were not responded to, and on this record, the only date that could have been executed was March 19th, 2014.  Thank you, Your Honors. Yes. Thank you, Mr. Russell. Mr. Stack? I really have little to add. I think I'm able to answer the questions that you might have. I will say this, though. One important point is Mr. Russell says that the document on which you're relying is not in the record. I have filed a motion for leave to file it, and I had it attached as an exhibit to that motion. So it is docketed. Mr. Russell says that that motion was denied. That motion was denied. Then it's not in the record. Did you ask us under Rule 10 to enlarge the record? I did not. Well, then it's just not in the record. Okay. I will respect that. Your Honor asked me what date it was signed, and I can tell you. I asked you to tell me based on what's in the record, and you didn't. I did not ask. But I will say this, though. My position was, and it still is, that that affidavit does not go to the interpretation of the agreement. It went to go to protect Mr. Klein from any kind of imputation that might have resulted from the statement by the State's Attorney's Office. Right. That doesn't allow us to treat it as substantive. I'm sorry? That does not allow us to treat it as substantive evidence. No, but the question was asked, do I know when it was signed, and I do. And that is the basis. It's a sworn statement of counsel. My time is up. Is that it? Thank you very much. Well, thank you very much, Mr. Nelson.